**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ROC NATION**, a Delaware Limited Liability Company,<br><br><br>Plaintiff,<br><br>-against-<br><br>**HCC INTERNATIONAL INSURANCE COMPANY, PLC**, a United Kingdom-Domiciled Insurance Company,<br><br>Defendant. | **Case No.: 1:19-cv-00554-PAE**<br><br>**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM**<br><br>**(JURY TRIAL DEMANDED)** |

Defendant, HOUSTON CASUALTY COMPANY (hereinafter "HCC"), improperly pled as HCC INTERNATIONAL INSURANCE COMPANY, PLC, a United Kingdom-Domiciled Insurance Company, by and through its attorneys, Vogrin & Frimet, LLP, by way of Answer with Affirmative Defenses to Plaintiff's, ROC NATION, a Delaware Limited Liability Company (hereinafter "Plaintiff" and/or "RN"), Complaint respectfully set forth:

**NATURE OF THIS ACTION**

1.      The allegations in paragraph 1 set forth a statement of claims brought by RN as against HCC to which no response is required.  To the extent a response is required, HCC denies the allegations in paragraph 1 of the Complaint.

      a.      Denied.

      b.      Denied.

      c.      Denied.

      d.      The allegations set forth in paragraph 1.d. are legal conclusions to which no response is required.  To the extent a response is required, HCC denies the allegations set forth in paragraph 1.d. of the Complaint.

1

e.      The allegations set forth in paragraph 1.e. are legal conclusions to which no response is required.  To the extent a response is required, HCC denies the allegations set forth in paragraph 1.e. of the Complaint.

f.      Denied.

g.      Denied.

h.      Denied.

i.      Denied.

j.      Denied.

k.      Denied.

l.      Denied.

## JURISDICTION AND VENUE

2.      HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 2 of the Complaint.

3.      HCC admits that it is a citizen of the United Kingdom.  HCC lacks sufficient knowledge or information to determine the truth of the remaining allegations set forth in paragraph 3 of the Complaint.

4.      HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 4 of the Complaint.

5.      HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 5 of the Complaint.

## THE PARTIES

6.      HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 6 of the Complaint.

      a.      HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 6.a. of the Complaint.

      b.      HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 6.b. of the Complaint.

7.      HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 7 of the Complaint.

8.      Admit.

9.      Denied.

<b><u>FACTUAL BACKGROUND</u></b>

**A.**      **HCC denies knowledge or information sufficient to form a belief as to the truth of <u>the allegations set forth in paragraph A of the Complaint.</u>**

10.      HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 10 of the Complaint.

11.      HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 11 of the Complaint.

12.      HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 12 of the Complaint.

13.      HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13 of the Complaint.

14.      HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 14 of the Complaint.

**B.**      **<u>DENIED.</u>**

15.      Denied.

16.     HCC denies the characterization of the allegations regarding Policy No. B1392BWIF161061 as set forth in paragraph 16 of the Complaint and respectfully refers this Court to Exhibit A of RN's Complaint, which speaks for itself.

17.     HCC denies the characterization of the allegations regarding Policy No.: B1392BWIF171074 as set forth in paragraph 17 of the Complaint and respectfully refers this Court to Exhibit B of RN's Complaint, which speaks for itself.

18.     HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 18 of the Complaint.

19.     HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 19 of the Complaint.

20.     HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 20 of the Complaint.

21.     Denied.

22.     Denied.

23.     Denied.

24.     HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 24 of the Complaint.

25.     HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 25 of the Complaint.

26.     HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 26 of the Complaint.

27.     HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 27 of the Complaint.

28.     Denied.

29.     HCC denies the characterization of the allegations regarding content on its website as set forth in paragraph 29 of the Complaint and respectfully refers this Court to its website, which speaks for itself.

30.     Denied.

31.     Denied.

32.     Denied.

**C.     <u>Denied.</u>**

33.     Denied.

34.     HCC denies the characterization of the allegations regarding the subject Policies and application forms as set forth in paragraph 34 of the Complaint and respectfully refers this Court to Exhibits A-D of RN's Complaint, which speak for themselves.

35.     Denied.

36.     HCC denies the characterization of the allegations regarding the subject Policies as set forth in paragraph 36 of the Complaint and respectfully refers this Court to Exhibits A-B of RN's Complaint, which speak for themselves.

37.     HCC denies the characterization of the allegations regarding Policy No. B1392BWIF161061 as set forth in paragraph 37 of the Complaint and respectfully refers this Court to Exhibit A of RN's Complaint, which speaks for itself.

38.     HCC denies the characterization of the allegations regarding Policy No.: B1392BWIF171074 as set forth in paragraph 38 of the Complaint and respectfully refers this Court to Exhibit B of RN's Complaint, which speaks for itself.

39.     Denied.

40.     Denied.

41.     HCC denies the characterization of the allegations regarding Policy No. B1392BWIF161061 as set forth in paragraph 41 of the Complaint and respectfully refers this Court to Exhibit A of RN's Complaint, which speaks for itself.

42.     HCC denies the characterization of the allegations regarding Policy No.: B1392BWIF171074 as set forth in paragraph 42 of the Complaint and respectfully refers this Court to Exhibit B of RN's Complaint, which speaks for itself.

43.     HCC denies the characterization of the allegations regarding Policy Nos.: B1392BWIF161061 and B1392BWIF171074 as set forth in paragraph 43 of the Complaint and respectfully refers this Court to Exhibits A-B of RN's Complaint, which speak for themselves.

44.     Denied.

45.     Denied.

46.     HCC denies the characterization of the allegations regarding Policy Nos.: B1392BWIF161061 and B1392BWIF171074 as set forth in paragraph 46 of the Complaint and respectfully refers this Court to Exhibits A-B of RN's Complaint, which speak for themselves.

47.     Denied.

48.     Denied.

49.     Denied.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

**D.     HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph D of the Complaint.**

55.     HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 55 of the Complaint.

56.     HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 56 of the Complaint.

57.     HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 57 of the Complaint.

58.     Denied.

59.     Denied.

60.     Denied.

61.     Denied.

62.     Denied.

63.     Denied.

64.     Denied.

65.     Denied.

66.      Denied.

67.     Denied.

68.     Denied.

69.     Denied.

70.     Denied.

71.     Denied.

72.     Denied.

73.     Denied.

74.     Denied.

75.     Denied.

**E.     <u>Denied.</u>**

76.     Denied.

77.     Denied.

78.     Denied.

79.     HCC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 79 of the Complaint.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Denied.

86.     HCC denies the characterization of the allegations regarding Policy Nos.: B1392BWIF161061 and B1392BWIF171074 as set forth in paragraph 86 of the Complaint and respectfully refers this Court to Exhibits A-B of RN's Complaint, which speak for themselves.

87.     Denied.

88.     Denied.

89.     Denied.

90.     Denied.

91.     Denied.

92.     Denied.

93.    Denied.

94.    Denied.

95.    Denied.

96.    Denied.

97.    Denied.

98.    Denied.

99.    Denied.

100.   Denied.

## CLAIMS FOR RELIEF

### AS AND FOR A FIRST CLAIM
**(Breach of Insurance Contract)**

101.   HCC re-alleges and incorporates by reference all allegations in all proceeding

paragraphs as if fully set forth herein.

102.   Denied.

103.   Denied.

    a.    Denied.

    b.    Denied.

    c.    Denied.

    d.    Denied.

    e.    Denied.

    f.    Denied.

    g.    Denied.

    h.    Denied.

104.   Denied.

105.    Denied.

106.    Denied.

## AS AND FOR A SECOND CLAIM
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

107.    HCC re-alleges and incorporates by reference all allegations in all proceeding paragraphs as if fully set forth herein.

108.    Denied.

109.    Denied.

      a.    Denied.

      b.    Denied.

      c.    Denied.

      d.    Denied.

      e.    Denied.

      f.    Denied.

      g.    Denied.

      h.    Denied.

      i.    Denied.

      j.    Denied.

110.    Denied.

111.    Denied.

112.    Denied.

113.    Denied.

114.    Denied.

115.    Denied.

116.    Denied.

117.    Denied.

118.    Denied.

119.    Denied.

## AS AND FOR A THIRD CLAIM
### (Declaratory Relief)

120.    HCC re-alleges and incorporates by reference all allegations in all proceeding paragraphs as if fully set forth herein.

121.    The allegations set forth in paragraph 121 are legal conclusions to which no response is required.  To the extent a response is required, HCC denies the allegations set forth in paragraph 121 of the Complaint.

122.    The allegations in paragraph 122 set forth a statement of RN's requested relief to which no response is required.  To the extent a response is required, HCC denies the allegations in paragraph 122 of the Complaint.

      a.      Denied.

      b.      Denied.

      c.      Denied.

      d.      Denied.

      e.      Denied.

      f.      Denied.

      g.      Denied.

      h.      Denied.

      i.      Denied.

      j.      Denied.

123.    Denied.

124.    Denied.

125.    Denied.

## JURY TRIAL DEMANDED

126.    The allegations in paragraph 126 set forth RN's demand for a jury trial to which no response is required.   To the extent a response is required, HCC denies the allegations in paragraph 126 of the Complaint.

## AFFIRMATIVE DEFENSES

HCC hereby expressly incorporates into each of the Affirmative Defenses the allegations and responses set forth in HCC's Answer as if fully set forth herein.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint is barred in whole or part by the applicable Statute(s) of Limitations.

### THIRD AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part by Waiver, Estoppel and Laches.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff is barred from relief due to its failure to mitigate its damages, if any.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Plaintiff lacks standing.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Plaintiff failed to join indispensable and/or necessary parties.

## SEVENTH AFFIRMATIVE DEFENSE

Some or all of the claims against HCC may be barred in whole or in part by the destruction of evidence (spoliation).

## EIGHTH AFFIRMATIVE DEFENSE

The relief sought by Plaintiff is barred by the doctrine of unclean hands.

## NINTH AFFIRMATIVE DEFENSE

To the extent any of the alleged wrongs were committed by others, any and all such claims are barred against HCC in their entirety.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are not ripe.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to attorneys' fees and/or costs.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claim for breach of the covenant of good faith and fair dealing and its claim for declaratory relief are duplicative of its first cause of action for breach of contract, and, therefore, must be dismissed with prejudice.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the "Condition Precedent" in the Policy.  Said condition provides:

**CONDITIONS PRECEDENT:**   It is a condition precedent to the Insurer's liability under this policy that the Insured Person(s) are fit and healthy at inception.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the "Basis of Insurance" provision in the Policy.  Said provision provides in relevant part:

**PART ONE – Basis of Insurance**

…

If the Insured has not notified Insurers about or have misrepresented any material facts or circumstances relating to this insurance or make any claim knowing it to be fraudulent, or in the case of any fraud or false statement, this insurance will become void from the start of this insurance.

…

<u>FIFTEENTH AFFIRMATIVE DEFENSE</u>

Plaintiff's claims are barred in whole or part to the extent that they are in excess of the "Limit of Indemnity." The definition of "Limit of Indemnity" provides:

**Limit of Indemnity:**    the maximum amount the Insurer will pay as shown in the schedule.

And are further barred in whole or part by the "Cover" provision of the Policy. Said provision provides in relevant part:

**PART THREE – Cover**

…

In no event shall the Insurer be liable to pay more than the Limit of Indemnity.

<u>SIXTEENTH AFFIRMATIVE DEFENSE</u>

Plaintiff's claims are barred in whole or in part by the "Pre-Existing Condition" exclusion in the Policy. Said exclusion provides:

**PART FIVE – Exclusions**

This insurance does not cover claims directly or indirectly contributed to or caused by:

…

12.    Bodily Injury or Sickness to any part of the body where such Accidental Bodily Injury or Sickness is wholly or partially, directly or indirectly caused by, contributed to by or aggravated by a Pre-Existing Condition.

<u>SEVENTEENTH AFFIRMATIVE DEFENSE</u>

Plaintiff's claims are barred in whole or in part by its failure to comply with the warranty as set forth in the "1. Medical Information" condition in the Policy. Said condition provides:

**PART SEVEN – Conditions**

1. **Medical Information**
   The **Insured** warrants that they have made all reasonable enquires to establish that the contracting party does not suffer any physical impairment, mental impairment or medical condition which may increase the risk of non-performance of the Insured contract, and that the Insured has disclosed to the Insurer all such information known by the Insured. The Insured will immediately disclose to the Insurer all further such information which comes to the attention of the Insured at any time either before or after the inception of this Insurance which does or may indicate the existence of any such impairment or medical condition.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by its failure to comply with the "2.

Change in Circumstances" condition in the Policy which provides:

2. **Change in circumstances**
   The Insured must obtain the Insurer's prior written agreement if there are any changes which may materially affect this Insurance including but not limited to changes in the terms, conditions or scope of the Insured contract shown in the schedule. The Insurer may then vary the terms and conditions of this insurance. If the Insured are in any doubt whether a change is material, the Insured should consult their broker or agent. In the event that the Insured contract shown in the schedule is terminated, this Insurance shall automatically and immediately come to an end simultaneously with the effective date of termination of the Insured contract, without further notice.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by its failure to comply with the "3.

Notice and proof of loss" condition which provides:

3. **Notice and proof of loss**
   Notice must be given to the Insurer as soon as reasonably possible of anything which results or may result in a claim under this Insurance. The Insured must keep all records so that the amount of any claim can be determined. All such records must be available for inspection by the Insurer in the event of a claim.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by its failure to comply with the "4.

Mitigation clause" condition in the Policy which provides:

4. **Mitigation clause**
   Any payments under this Insurance will only be made if the Insured cooperate with the Insurer in the investigation of any claim or incident leading to a claim and agree to take all reasonable action in their power to mitigate any loss under this policy.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

Plaintiff has an obligation to prove its claim and failed to do so.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

Plaintiff failed to cooperate with HCC in the investigation of this claim.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred in whole or in part due to scrivener's error, and the intent and mutual understanding of the parties when entering into the Policy.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

The allegations in Plaintiff's Complaint fail to set forth its claims with sufficient particularity to enable HCC to determine all applicable affirmative defenses.  HCC therefore reserves its right to assert additional defenses that may be applicable, to withdraw any defenses that are found to be inapplicable, and to more specifically assert affirmative defenses once the precise nature of the claims are ascertained through discovery and further investigation.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

To the extent that Plaintiff misrepresented facts in applying for or proposing that insurance be issued or otherwise failed to satisfy conditions precedent to the policy, such policy is void *ab initio* and Plaintiff has no claim thereunder and HCC seeks full recovery of all amounts paid under the policy subject to a credit to Plaintiff to reflect the return of any premium paid.

**WHEREFORE,** HCC respectfully requests that this Honorable Court dismiss Plaintiff's Complaint with prejudice and award HCC the attorneys' fees, costs and disbursements which HCC incurs in defending against this Complaint.

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

HCC, by and through its attorneys, Vogrin & Frimet, LLP, by way of this Counterclaim against RN, hereby comes forth and says:

## NATURE OF COUNTERCLAIM FOR DECLARATORY RELIEF

1.      HCC brings this Counterclaim to obtain a declaratory judgment pursuant to Rules 13 and 57 of the Federal Rules of Civil Procedure, wherein HCC seeks an order of this Honorable Court declaring that: (A) RN failed to cooperate with HCC in the investigation of this claim; (B) by failing to cooperate with HCC in the investigation of this claim, RN has materially breached the Policy/Contract; and, therefore, (C) HCC's denial of this claim for RN's failure to cooperate was appropriate; (D) as a result of RN's failure to cooperate with HCC's investigation of this claim, HCC is not liable to indemnify RN for any alleged loss in connection with the claims and/or allegations set forth in RN's Complaint; and (E) HCC is entitled to repayment of all amounts paid under the policy with interest costs and fees.

## STATEMENT OF FACTS
## RELEVANT TO COUNTERCLAIM

### A.      Factual Background

2.      As part of their good faith efforts to investigate this claim, HCC entered into a Non-Disclosure Agreement ("NDA") at the request of RN in order to be provided information RN deemed confidential.  The information and agreements obtained, and their contents will be set forth in further detail upon written agreement between the parties or a protective order being entered by the Court.  However, as a result, HCC is limited in providing certain details related to these allegations.

3.      RN is a subsidiary of Live Nation Entertainment, Inc. ("LNE"), which was founded in 2008.

4.     Career Artist Management, LLC ("CAM"), also a subsidiary of LNE, was founded in 2005 by Jordan Feldstein ("Mr. Feldstein" and/or "Decedent").

5.     CAM provided management services on a contract fee basis to various music artists.

6.     Prior to his death, Mr. Feldstein managed Maroon 5 since its inception and also managed a lineup of other clients under the CAM name.

7.     Mr. Feldstein was the sole person/manager responsible for each artist of CAM prior to his death.

8.     Prior to his death, Mr. Feldstein owned a percentage of CAM with the remaining percentage owned by Artist Nation Management Group, LLC (also a subsidiary of LNE).

**B.     Relationship between CAM and RN**

9.     Mr. Feldstein and RN entered into an agreement on or about September 14, 2016, whereby Mr. Feldstein agreed to sell his interest in CAM to RN (the "Purchase Agreement"). However, on or about December 22, 2017, Mr. Feldstein passed away.

**C.     The Policies**

10.     Subsequent to entering into the Purchase Agreement, RN sought, and HCC issued policy No.: B1392BWIF161061 (the "2016-2017 Policy").

11.     The intent and understanding of the parties when seeking and issuing the 2016-2017 Policy was that it would solely insure the purchase price RN paid for a portion of Mr. Feldstein's share of CAM less any recoupment generated as the result of and/or during the time services were performed by Mr. Feldstein.

12.     In fact, the 2016-2017 Policy insured the purchase price with a limit of indemnity in the amount of $14,500,000.

13.    The 2016-2017 Policy clearly sets forth when coverage is triggered and provides:

**PART THREE – Cover**

The Insurer will pay the **Direct Ascertained Net Loss**, up to the **Limit of Indemnity**, suffered by the Insured directly resulting from the non-performance of the insured contract due to the **Insured Person's Failure to Survive** during the **Period of Insurance**.

14.    The 2016-2017 Policy clearly sets forth the definition of Direct Ascertained Net Loss and provides:

**Direct Ascertained Net Loss**       means the amount remaining that the Insured is obliged to pay to satisfy its financial obligation or incurs as a loss under the insured contract after subtracting all revenue and other value generated as the result of and/or during the time services were performed by the Insured Person.

15.    The 2016-2017 Policy identified Mr. Feldstein as the "Insured Person."

16.    RN, and/or its broker, were made aware of the wording of the policy including all terms and conditions of the policy.

17    The 2016-2017 Policy lapsed on or about September 14, 2017.

18.    Thereafter, RN sought to adjust the coverage to include Adam Levine. After negotiation, a new policy was issued which included coverage for Adam Levine as well as adding coverage for disability.  HCC issued, policy No.: B1392BWIF171074 (the "2017-2018 Policy" and/or the "Policy").

19.    Although the 2016-2017 Policy lapsed, the 2017-2018 Policy was intended to and understood by the parties to be a renewal policy, as admitted by RN.

20.    The intent and understanding of the parties when seeking and issuing the 2017-2018 Policy was that it would solely insure the purchase price less any recoupment generated as the result of and/or during the time services were performed by Mr. Feldstein.

21.    In fact, the 2017-2018 Policy insured the purchase price less RN's recoupment of $2,085,177 in 2016, which reflects revenue generated as the result of and/or during the time

services were performed by Mr. Feldstein, for a total limit of indemnity in the amount of $12,529,222.

22.     As a result, any scriveners error(s) in the 2017-2018 Policy are *de minimus* and represent mere typographical errors which do not reflect or change the true intent and understanding of the Parties when entering into the Policy.

**D.      RN's Insurance Claim**

23.     On or about December 27, 2017, the placing broker notified HCC of Mr. Feldstein's death and on or about April 6, 2018 certain claim information was submitted by RN.

24.     RN's insurance claim indicated that RN understood it purchased a "Critical Asset Protection Policy," covering its "Direct Ascertained Net Loss."

25.      RN's insurance claim establishes that RN understood the Policy does not protect RN's anticipated profits from entering into the Purchase Agreement, but only the First Closing Purchase Price less any recoupments that were generated as the result of and/or during the time services were performed by Mr. Feldstein.

26.     Correspondence from RN in response to requests for information from HCC and Matson, Driscoll & Damico LLP ("MDD"), particularly correspondence dated July 18, 2018, provides that RN was basing its loss calculations on the First Closing Purchase Price less revenue recouped by RN as a result of and/or during the time services were performed by Mr. Feldstein.

**E.      HCC's Investigation of the Claim**

27.     On or about May 2, 2018, HCC sent RN a combined reservation of rights and a request for information (the "ROR").  The document is not attached based on the NDA described in paragraph 2.

28.     The ROR requested information and documentation including but not limited to: (1) how RN acquired certain artists that were formerly under the CAM name prior to Mr. Feldstein's death; (2) what happened to the membership interest RN acquired in CAM; and (3) documents referenced in the Purchase Agreement, including but not limited to the Third Amended and Restated Limited Liability Company Agreement of CAM (the "Operating Agreement").

29.     HCC also advised RN that it was appointing MDD, Forensic Accountants in New York, New York, to assist in the investigation, compilation and review of all information regarding the alleged Direct Ascertained Net Loss and requested that RN fully cooperate with MDD in this regard and reserved HCC's rights in full.

30.     On or about May 7, 2018, MDD forwarded RN a preliminary request for information. The document is not attached based on the NDA described in paragraph 2.

31.     MDD requested information and documentation from RN to support its financial aspect of this claim such as the Quarterly Fee Tail statements for CAM and RN, monthly trust detail, profit and loss statements, general ledgers, bank statements, copy of the Amended and Restated Executive Employment Agreement (the "Employment Agreement"), list of artists that were previously managed by CAM and now by RN, and all exhibits that were attached to the Purchase Agreement.

32.     On May 30, 2018, and June 8, 2018, MDD and HCC received purported responses from RN to their requests for information respectively. The documents are not attached based on the NDA described in paragraph 2.

33.     Aside from providing a copy of the Operating Agreement and Employment Agreement, said responses indicated that CAM and/or RN continued to manage certain artists.

34.     RN's responses represented that other artists are no longer managed by CAM.

35.     RN further represented that certain artists remained clients of CAM as of the date of Mr. Feldstein's death and, with the "scaling down" of CAM's roster of artists and staff of employees, they were "moved" over to RN.

36.     RN indicated that it continued to maintain a membership interest in CAM.

37.     RN's correspondence in response to HCC's and MDD's request for information also included a "Termination Agreement." The documents is not attached based on the NDA described in paragraph 2.

38.     Although RN made mention of the Termination Agreement, RN did not provide a copy of the Termination Agreement until on or about July 3, 2018.

39.     Although the Termination Agreement reflects that it was entered into on March 19, 2018, RN failed to notify HCC about the existence of and terms of the Termination Agreement prior to its execution, nor when it was executed or when RN submitted its insurance claim.   The Termination Agreement was also entered into after HCC received notice of the claim, and, as such, RN failed to notify HCC of its intent to alter the contract.

40.     RN's July 3, 2018 correspondence was also accompanied by Releases for certain artists no longer managed by CAM, as well as a Trademark Assignment Agreement ("TM Agreement").

41.     The Purchase Agreement, Termination Agreement, Operating Agreement, Employment Agreement, and TM Agreement each carve out or play a part in RN recouping the purchase price from revenue generated as the result of and/or during the time services were performed by Mr. Feldstein.

42.     Artists that "moved" from CAM to RN each now provide a revenue stream directly to RN that can only be attributed to and/or classified as revenue generated as the result of and/or during the time services were performed by Mr. Feldstein, as, by RN's own admission, he was the sole person/manager responsible for these artists prior to his death.

43.     As such, HCC and MDD sought financial information and documentation regarding monies received or to be received by RN in accordance with the terms of these agreements and from artists that "moved" from CAM to RN immediately following Mr. Feldstein's death.

44.     Although HCC and MDD rightfully sought the aforementioned documents and information, RN provided minimal information and objected to and refused to provide anything further on the purported basis that it "was not relevant."

45.     Aside from the aforementioned objection to pertinent requests regarding the financial aspect of this claim, RN also objected on the alleged basis that the information requested is "confidential," although HCC and MDD executed a NDA, which neither were required to do by law.

46.     HCC's and MDD's execution of the NDA was one of many good faith efforts to investigate, adjust and resolve RN's claim.

47.     HCC also requested that RN provide executed HIPAA release forms for the Decedent's medical records.  In response to this request, RN advised HCC that it did not represent the Decedent or the Decedent's estate.

48.     The duty to cooperate under the terms and conditions of the policy rest with RN, and RN alone.  They have to obtain compliance of the Insured Person, or their estate.  A lack of compliance by the Insured Person creates a failure to cooperate on the part of the Insured.

49.     Thereafter, although not legally required to do so, in another effort of good faith to investigate, adjust and resolve the claim HCC requested, and RN provided, contact information for counsel for the Decedent's estate.  However, upon communicating with counsel for the estate, HCC was advised that counsel for the Decedent's estate would not provide an executed HIPAA release form nor any medical information/documentation unless it was directly requested by RN. The documents are not attached based on the NDA described in paragraph 2.

50.     Despite RN's obligation to cooperate with HCC in the investigation of this claim and HCC rightfully seeking this information, RN failed to request same from the Decedent's estate and appears to have stonewalled HCC's investigation in this regard.

51.     Although RN objected to and refused to provide further financial information/documentation necessary for HCC to continue to adjust this claim and for MDD to continue its analysis of same, MDD's analysis and investigation as of August 13, 2018, indicated a value of potential claim amount of $1,176,595 for potential revenue lost for those bands/talent that appear to have left CAM and/or did not join RN or were not involved in the Termination Agreement.

52.     As such, on or about August 13, 2018, HCC offered $1,176,595 as a good faith payment for this portion of the claim without prejudice and under a full reservation of rights. Along with this offer, HCC also continued to advise RN that it requires its continued cooperation to obtain all additional information requested to fully evaluate the claim.

53.     RN accepted HCC's good faith payment offer on or about August 20, 2018, and, since that time and prior thereto, has and continues to refuse to provide the aforementioned

information, which is necessary for HCC and MDD to continue to evaluate the further portions of the claim.[1]

54.      HCC invited an in-person meeting with RN in yet another good faith attempt to clarify issues and resolve this matter.  RN agreed to an in-person meeting after several repeated requests.  As such, the parties held a meeting on September 21, 2018 at RN's office located in New York, New York.

55.      HCC flew in a representative from London who was present at the meeting. Although RN represented that it wanted the meeting to be held at its office because "it would be helpful for [its] CFO to have the meeting there where he can easily locate any financial records," no such documents were provided.

56.      Following the aforementioned in-person meeting, RN continued to refuse and failed to provide the requested information, which is essential for HCC to continue its evaluation of this claim.

57.      As a result of RN's failure to cooperate with HCC in its investigation of this claim, HCC denied the remainder of the claim on September 28, 2018, and set forth its reservation of rights pertaining to other policy provisions as well.[2]  The document is not attached based on the NDA described in paragraph 2.

58.      After HCC's denial of the remainder of the claim, HCC remained open to and continued discussions with RN, while continuing to stress that the claim remained denied and

---

[1] Despite RN's own insurance claim, which alleges a direct ascertained net loss in the amount of $10,759,869, and HCC's good faith payment in the amount of $1,176,595, RN has and continues to demand the policy limits; $12,529,222.

[2] It should also be noted that HCC reserved the right to void the Policy *ab initio* due to, upon information and belief, certain failures to comply with conditions precedent and misrepresentations concerning Mr. Feldstein's health, which remain under investigation.

that HCC's hands were tied unless and until RN provided the outstanding information that had been requested multiple times.

59.     Having continued to reserve its rights in full and continuing to stress that the claim remained denied, HCC agreed to participate in a non-binding mediation to attempt to resolve issues concerning the outstanding information; to no avail.

60.     Although HCC and MDD sought relevant financial information from RN in order to quantify this claim, leaving other coverage issues aside, RN has and continues to refuse to provide the financial information requested.

61.     Financial information and documentation concerning the aforementioned agreements are necessary and required in order for HCC and MDD to continue to adjust and analyze this claim.

62.     Financial information and documentation concerning artists that were solely managed by Mr. Feldstein under the CAM name prior to his death and subsequently and conveniently "moved" to RN thereafter are necessary to HCC's and MDD's ability to adjust and analyze this claim.

63.     Consideration called for and/or received or to be received in accordance with the aforementioned agreements and revenue received from artists that "moved" from CAM to RN each represent revenue generated as the result of and/or during the time services were performed by Mr. Feldstein.

64.     Mr. Feldstein was the founder and principal of CAM.  In this regard, any consideration received in exchange for transferring the CAM name also represents revenue generated as the result of and/or during the time services were performed by Mr. Feldstein.

65.     RN has and continues to refuse to provide financial information and documentation concerning these agreements.

66.     RN has and continues to refuse to provide financial information and documentation concerning artists that "moved" from CAM to RN immediately following Mr. Feldstein's death.

67.     RN has and continues to refuse to provide financial information/documentation that was requested as far back as May 2018.

68.     Due to RN's failure to provide the aforementioned information and documentation, HCC was left with no other choice but to deny the remainder of RN's claim based on their breach of their obligation to cooperate with HCC in the investigation of this claim.

69.     HCC made every good faith attempt to adjust and analyze this claim prior to its denial, and to keep discussions open with RN thereafter while stressing that the claim remained denied and continuing to reserve its rights.

70.     The simple fact of the matter is that RN has an obligation to prove its claim and to cooperate with HCC in the investigation of the claim and it failed to do so.

71.     As a result, RN has failed to cooperate with HCC's investigation of this claim and has therefore materially breached the Policy.

## COUNT I
## COUNTERCLAIM FOR DECLARATORY JUDGMENT AGAINST PLAINTIFF

72.     HCC re-alleges and incorporates by reference all allegations in all proceeding paragraphs as if fully set forth herein.

73.     As indicated above, a dispute has arisen with respect to whether HCC is obligated to indemnify RN for its alleged loss after RN failed to cooperate with HCC in the investigation of this claim as well as the true intent and understanding of the Parties regarding the application

of the Policy.

74.     HCC has the right to investigate this insurance claim and RN has an obligation to prove its claim, which it has failed to do.

75.     HCC maintains that RN failed to cooperate with HCC in the investigation of this claim.

76.     Despite HCC's numerous requests for relevant financial information required to fully adjust this claim, RN has and continuously refuses to provide this information.

77.     As a result of RN's failure to cooperate with HCC in the investigation of this claim, HCC denied the remainder of the claim on September 28, 2018.

78.     Although, HCC denied the remainder of the claim, HCC continued to remain open to discussions with RN while stressing that the claim remained denied and continuing to reserve its rights in full and requesting the outstanding information/documentation required to continue discussions.

79.     HCC made several good faith attempts to adjust this claim prior to its denial as well as several good faith attempts to discuss this matter with RN even after the denial; to no avail, as RN has and continues to refuse to provide the information necessary to continue to adjust this claim or continue discussions.

80.     Although RN has an obligation to cooperate with HCC in the investigation of this claim, RN failed to request HIPAA releases and medical documents concerning Mr. Feldstein's health from his estate and, upon information and belief, has stonewalled HCC's investigation in this regard.

81.     Despite admitting it understood how the Policy applied and the parties' intent when they sought and issued the Policy, RN now seeks to alter the Policy into something it is not and was never intended to be by the Parties.

82.     As a result, HCC brings this counterclaim for declaratory judgment so this Honorable Court may determine the respective rights, duties, and liabilities of HCC, with respect to the Policy.

83.     HCC respectfully requests a judgement in its favor declaring that: (A) RN failed to cooperate with HCC in the investigation of this claim; (B) by failing to cooperate with HCC in the investigation of this claim, RN has materially breached the Policy/Contract; and, therefore (C) HCC's denial of this claim for RN's failure to cooperate was appropriate; (D) as a result of RN's failure to cooperate with HCC's investigation of this claim, HCC is not liable to indemnify RN for any alleged loss in connection with the claims and/or allegations set forth in RN's Complaint; and (E) HCC is entitled to repayment of all amounts paid under the policy with interest costs and fees.

84.     This Declaratory Judgment action is sought because HCC does not otherwise have an adequate remedy at law.

**WHREREFORE**, HCC respectfully requests that this Honorable Court enter a judgment in its favor and against RN declaring that:

**A.** RN failed to cooperate with HCC in the investigation of this claim;

**B.** By failing to cooperate with HCC in the investigation of this claim, RN has materially breached the Policy/Contract;

**C.** HCC's denial of this claim for RN's failure to cooperate was appropriate; and

**D.** HCC is not liable to indemnify RN for any alleged loss in connection with the claims and/or allegations set forth in RN's Complaint due to RN's failure to cooperate.

**E.** HCC is entitled to repayment of all amounts paid under the policy with interest costs and fees.

## JURY TRIAL DEMANDED

HCC hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure as to all issues or claims for which a jury trial is allowed.

Dated: New York, New York
March 22, 2019

Respectfully submitted,

**VOGRIN & FRIMET, LLP.**

BY:   */s/ George J. Vogrin*
George J. Vogrin, Esq. (GV5889)
Michael J. Frimet, Esq. (MF2051)
Walter D. Santiago, Jr., Esq. (WS1042)
150 Broadway, Suite 1200
New York, New York 10038
(212) 513-1075
Attorneys for Defendant,
*Houston Casualty Company*