UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――

ROC NATION LLC,

                              Plaintiff,

           v.

HCC INTERNATIONAL INSURANCE
COMPANY, PLC,

                              Defendant.

19 Civ. 554 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

      Plaintiff Roc Nation LLC ("Roc Nation") brings this action against defendant HCC International Insurance Company, PLC ("HCC"),[1] seeking relief for an insurance dispute. Roc Nation purchased two insurance policies from HCC to insure the life of Jordan Feldstein, the founder of Career Artist Management LLC ("CAM") and close friend of Adam Levine, the lead vocalist of the band Maroon 5. After Feldstein's death, Roc Nation submitted a claim to HCC, which HCC denied. Roc Nation later filed this lawsuit, alleging breach of contract and breach of the implied covenant of good faith and fair dealing, and seeking declaratory relief. *See* Dkt. 18 (First Amended Complaint). Broadly, Roc Nation alleges that HCC made misrepresentations about its insurance policy, improperly denied Roc Nation's claims, and maintains a practice of delaying investigations and denying the claims of similarly situated policy holders in bad faith. HCC counterclaims, seeking a declaratory judgment that, *inter alia*, Roc Nation failed to

―――――――――――――――――――――――――――――

[1] The proper legal entity for defendant is Houston Casualty Company, which was improperly pled as HCC International Insurance Company, PLC. *See, e.g.*, Dkt. 111 at 1.

cooperate in HCC's investigation of the insurance claim and HCC's denial of coverage was appropriate. *See* Dkt. 20 (answer and counterclaim).

Since July 16, 2019, the parties have been engaged in discovery, *see* Dkt. 39 (initial case management plan), and the regrettably persistent inability of counsel to resolve discovery disputes collegially has resulted in an uncommon volume of such disputes being brought to the Court, *see, e.g.*, Dkts. 53, 56–58, 64 (parties' letters raising discovery disputes and Court's order resolving those disputes). Before the Court is the latest such dispute. On March 30, 2020, Roc Nation requested that the Court compel HCC to produce documents, which HCC claims are privileged. Dkts. 100 (under-seal letter from Roc Nation) ("RN Letter"), 101 (redacted letter from Roc Nation). On April 2, 2020, HCC filed its response, Dkt. 106 ("HCC Response"), along with an under-seal exhibit, Dkt. 107.

In particular, Roc Nation seeks the production of communications between HCC and its attorneys from the law firm of Vogrin Frimet that occurred mostly before HCC's denial of Roc Nation's claim. *See* RN Letter at 1–2; *see also id.* at 4 (Appendix A and Appendix C). Roc Nation contends that these documents are not privileged because Vogrin Frimet attorneys were acting as claims investigators, *see id.* at 1–2, while HCC asserts that these attorneys were providing legal advice and not investigating Roc Nation's claim, *see* HCC Response at 1. On April 8, 2020, the Court, constrained by the parties' factual disagreements, ordered HCC to produce the contested documents *ex parte* for *in camera* review to resolve the dispute. Dkt. 110 at 2–3. For the following reasons, the Court, having reviewed these documents, sustains HCC's claim of privilege as to most contested documents, but orders HCC to produce, or produce in less-redacted form, other documents.

I.     **Applicable Legal Principles**

The parties' present dispute involves the intersection of privilege law with an insurance claims investigation undertaken by counsel. As to various documents, HCC invokes either the attorney-client privilege, the work product doctrine, or both. The Court's assessment begins by reviewing these doctrines, in general and as presented in the context of disputed coverage claims.

A.     **Attorney-Client Privilege**

New York law governs the applicability of the attorney-client privilege in this diversity case.[2] *See 105 St. Assocs. v. Greenwich Ins. Co.*, No. 05 Civ. 9938 (VM) (DF), 2006 WL 3230292, at *3 (S.D.N.Y. Nov. 7, 2006); *Weber v. Paduano*, No. 02 Civ. 3392 (GEL), 2003 WL 161340, at *10 (S.D.N.Y. Jan. 22, 2003). Under New York law, the attorney-client privilege requires "the existence of an attorney-client relationship, a communication made within the context of that relationship for the purpose of obtaining legal advice, and the intended and actual confidentiality of that communication." *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 289 F.R.D. 41, 46 (E.D.N.Y. 2011) (citation omitted). It is "limited to communications—not underlying facts." *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 377 (1991). The privilege does not depend on the prospect of litigation, but instead, "turns on whether the communication, viewed in its full content and context, is of a legal character." *105 St. Assocs.*, 2006 WL 3230292, at *3; *see also Spectrum*, 78 N.Y.2d at 380 ("[T]he attorney-client privilege is not tied to the contemplation of litigation."). And, "[t]he inclusion of nonprivileged information 'in an otherwise privileged lawyer's communication to its client—while influencing

---

[2] The parties treat New York law as governing this dispute. *See, e.g.*, RN Letter at 2 (citing and discussing New York law); HCC Response at 1 (same). The Court will do the same. *See Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such implied consent . . . is sufficient to establish choice of law." (internal quotation marks and citation omitted)).

whether the document would be protected in whole or only in part—does not destroy the immunity.'" *105 St. Assocs.*, 2006 WL 3230292, at *3 (quoting *Spectrum*, 78 N.Y.2d at 378).

However, "[u]nder New York law, an insurance company's claim handling activities are generally subject to discovery even if they were performed by an attorney." *In re Residential Capital, LLC*, 575 B.R. 29, 35 (S.D.N.Y. 2017); *see also Nat'l Union Fire Ins. Co. of Pittsburgh v. TransCanada Energy USA, Inc.*, 990 N.Y.S.2d 510, 511–12 (1st Dep't 2014); *Melworm v. Encompass Indem. Co.*, 977 N.Y.S.2d 321, 323 (2d Dep't 2013); *Brooklyn Union Gas Co. v. Am. Home Assurance Co.*, 803 N.Y.S.2d 532, 534 (1st Dep't 2005). The key question is whether the attorney is predominantly investigating an insurance claim or providing legal advice.[3] *See State Farm Mut. Auto. Ins. Co. v. 21st Century Pharmacy, Inc.*, No. 17 Civ. 5845 (MKB) (VMS), 2020 WL 729775, at *3 (E.D.N.Y. Feb. 12, 2020) ("The critical inquiry is whether the communication was . . . primarily a report[] of an investigation of [a] claim and therefore discoverable or primarily or predominantly of a legal character and therefore protected by the attorney-client privilege." (alteration in original) (citation omitted)); *105 St. Assocs.*, 2006 WL 3230292, at *3 ("Although '[i]n the context of insurance litigation, attorney-client communications have been denied protection when it appears the attorney is merely *investigating* a claim on a policy,' . . . when such communications relate to *legal advice*, they do not lose the

---

[3] *Compare Nat'l Union Fire Ins. Co.*, 990 N.Y.S.2d at 511–12 (attorney-client privilege did not apply because insurance companies retained counsel for opinion on claims coverage and counsel "were primarily engaged in claims handling"); *Brooklyn Union Gas Co.*, 803 N.Y.S.2d at 534 (attorney-client privilege did not apply where "attorneys were acting as claims investigators, not attorneys" and provided "no legal advice" and "no legal recommendations"), *with Congregation BNEI Luzer, Inc. v. Md. Cas. Co.*, No. 04 Civ. 2353 (BSJ) (DFE), 2004 WL 2609570, at *1 (S.D.N.Y. Nov. 17, 2004) (attorney-client privilege applied when attorneys—hired while insurance company was investigating claim and "long before [it] contemplated litigation"—acted as "legal advisor, not as 'claims adjustors, claims process supervisors, or claims investigation monitor[s]' (citation omitted)).

protection of the attorney-client privilege simply because they involve an insurance claim." (emphasis in original) (quoting *Evanston Ins. Co. v. Oea, Inc.*, Misc. M8-85 (CM), 2006 WL 1192737, at *4 (S.D.N.Y. May 4, 2006) (related case No. 02-1505-DFL-PAN (E.D. Cal.)). If the attorney is investigating the claim, no privilege applies because "[a]n insurer cannot shield such documents from discovery by using the same lawyer to handle the coverage decision and any ensuing coverage litigation." *Evanston Ins. Co.*, 2006 WL 1192737, at *4.

B.     **Work Product Doctrine**

Unlike the attorney-client privilege, the work product doctrine is governed by federal law in federal court actions. *In re Residential Capital, LLC*, 575 B.R. at 42. For the work product doctrine to apply, the material at issue "must be (1) documents or tangible things, (2) that were prepared in anticipation of litigation, and (3) were prepared by or for a party, or by or for his representative." *Weber*, 2003 WL 161340, at *3. For a court considering whether a document was created in anticipation of litigation, the main question is whether the document was prepared "*because of* the prospect of litigation." *Id.* (emphasis in original) (quoting *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998)); *see also Stephenson Equity Co. v. Credit Bancorp., Ltd.*, No. 99 Civ. 11395 (RWS), 2002 WL 59418, at *2 (S.D.N.Y. Jan. 16, 2002). "[D]ocuments that were prepared in the ordinary course of business or that 'would have been created in essentially similar form irrespective of the litigation' are not protected by the work product doctrine.'" *Weber*, 2003 WL 161340, at *3 (quoting *Adlman*, 134 F.3d at 1202). However, "a document prepared in anticipation of litigation that also serves an ordinary business purpose is not deprived of work-product doctrine protection." *In re Residential Capital, LLC*, 575 B.R. at 42.

The application of this doctrine in the insurance context is "particularly troublesome because it is the routine business of insurance companies to investigate and evaluate claims[.]"

*Mt. Vernon Fire Ins. Co. v. Try 3 Bldg. Servs., Inc.*, No. 96 Civ. 5590 (MJL) (HBP), 1998 WL 729735, at *5 (S.D.N.Y. Oct. 16, 1998); *see also In re Residential Capital, LLC*, 575 B.R. at 42–43.  Some courts have applied a presumption that reports prepared before a coverage decision are not protected by the work product doctrine, *see Mt. Vernon Fire Ins. Co.*, 1998 WL 729735, at *6 (collecting cases), while holding that "[t]his presumption may be rebutted by the insurer if it demonstrates with specific competent proof that it possessed a 'resolve to litigate' when the documents were created." *In re Residential Capital, LLC*, 575 B.R. at 43 (quoting *AIU Ins. Co. v. TIG Ins. Co.*, No. 07 Civ. 7052 (SHS) (HBP), 2008 WL 4067437, at *12 (S.D.N.Y. Aug. 28, 2008)).  Other courts, instead of employing that presumption, "have adopted a more flexible case-by-case approach." *Mt. Vernon Fire Ins. Co.*, 1998 WL 729735, at *7 (collecting cases).  Such an approach is fact-specific.  *Evanston Ins. Co.*, 2006 WL 1192737, at *4 ("When an investigation conducted by counsel crosses the line from business-centered (and unprotected) to litigation-centered is question of fact that must be determined on a case-by-case basis.").  Under both approaches, relevant—although not dispositive—factors that help indicate anticipation of litigation include the date the insurance company hired a law firm, the date a reservation of rights letter was issued, and the date the claim was denied.  *See In re Residential Capital, LLC*, 575 B.R. at 43–44.

**II.    Application**

The Court's review covered a large volume of disputed documents.  For most, HCC invokes attorney-client privilege.  For a few, HCC also invokes work product protection.  The Court first addresses its general framework for determining whether a document in this case is properly classified as privileged, and then addresses individual documents.

### A. General Framework

In applying the attorney-client privilege here, the Court must determine whether Vogrin Frimet was primarily investigating Roc Nation's claim or providing HCC with legal advice. *See State Farm Mut. Auto. Ins. Co.*, 2020 WL 729775, at *3. It is possible for attorneys to play both roles. For example, in *In re Residential Capital*, the Bankruptcy Court held that counsel for the insurance company there "wore two hats: that of a claims handler and legal counsel." 575 B.R. at 37. Counsel performed some claims handling functions, but also performed claims analysis, advised on potential coverage issues, supplied legal advice, and provided a recommendation—without making the ultimate decision—on the final claim determination. *See id.* at 38–39. As a result, the court held that certain documents had both privileged and non-privileged components. *See id.* at 41. For example, it held that factual and historical information reflecting claims processing should be disclosed, while other discussion of legal issues—including case citations, statutes, the potential applicability of exclusions and defenses, and facts about the policy alongside legal analysis—were privileged. *See id.*

The Court's *in camera* review reveals that Vogrin Frimet similarly was, at various times, serving both roles: Its attorneys both investigated Roc Nation's claim and provided legal advice to HCC. Some documents, or portions of documents, reflect attempts to gather facts about the claim or provide a recitation of the investigation's facts. Other documents are communications that predominantly provide legal advice, including references to legal strategy, legal doctrine, case law, and settlement. The legal character of this second category of communications is supported by the timing of HCC's hiring of Vogrin Frimet—four months after Feldstein's death and Roc Nation's subsequent claim, *see* RN Letter at 1–2—which suggests that HCC considered litigation a real possibility and was, at least in part, seeking Vogrin Frimet's advice in defending a potential legal claim.

As a result, the Court has used the following general principles when conducting its document-by-document analysis:

*First*, HCC must disclose documents relating to the claims investigation, including those drafted by Vogrin Frimet that reflect its role as investigator of facts or that reflect the results of the firm's factual investigation. Such documents include, for example, draft emails to Roc Nation and others asking for claim information or assessments of the claim. It also includes the factual sections of legal memoranda.

*Second*, HCC need not disclose documents that contain communications made for the purpose of providing legal advice. As mentioned above, communications in this category include discussions of legal strategy, legal doctrine, case law, and settlement strategy. Communications to facilitate the giving of legal advice, *e.g.*, emails that schedule meetings, are also properly withheld.

*Third*, HCC must disclose documents that were authored by, signed by, or shared in some way with Roc Nation. *Cf. Kingsway Fin. Servs, Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ 5560 (TMB) (HBP), 2007 WL 1837133, at *2 (S.D.N.Y. June 27, 2000) (collecting cases for settled proposition that attorney-client privilege is waived through disclosure to a third party, including adversary). This includes email communications with Roc Nation.

*Fourth*, HCC must disclose email attachments—even if attached to a privileged email—if the attachments do not themselves contain or refer to legal advice. *See, e.g.*, *Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 599–600 (S.D.N.Y. 2015) (allowing party to withhold emails and attachments as privileged because they referred to legal advice); *ACE Sec. Corp. v. DB Structured Prods., Inc.*, 40 N.Y.S.3d 723, 732–33 (Sup. Ct., N.Y. Cty. 2016) (explaining that

attachments are not automatically privileged and requiring production of business records attached to privileged emails).

*Fifth*, HCC need not disclose documents that are not responsive to Roc Nation's requests.

### B. Individual Document Review

Next, the Court applies the above principles to the documents reviewed *in camera*. The documents fall into three categories: (1) documents, or portions of documents, that are privileged and have been properly withheld by HCC, in whole or in part; (2) documents that are not privileged and must be disclosed to Roc Nation; and (3) documents that the Court declines, at this time, to address.

#### 1. Documents Properly Withheld by HCC, in Whole or in Part

##### a. Documents Properly Withheld in Full

*TMHCC 000796–798; TMHCC 000902–906; TMHCC 000911–913; TMHCC 000914–918; TMHCC 000919–926; TMHCC 000927–933; TMHCC 000934–942; TMHCC 000961–962; TMHCC 000963–970; TMHCC 00971–977* — These documents are the initial email chain between HCC and Vogrin Frimet related to Roc Nation's claim, in which HCC first sought Vogrin Frimet's assistance with the claim. The parties set up a time to meet and discussed legal issues arising from that first meeting. HCC has properly invoked attorney-client privilege to protect these documents.

*TMHCC 1056* — This email from Vogrin Frimet to HCC inquiring about a legal issue is properly withheld.

*TMHCC 1057–1061* — HCC produced a redacted version of this email chain that disclosed emails sent from Roc Nation and from MDD, the forensic accountants employed by HCC to investigate Roc Nation's claim, to HCC. HCC appropriately withheld emails between Vogrin Frimet and HCC raising legal issues.

9

*TMHCC 001201–1203; TMHCC 001204–1206; TMHCC 001210–1211; TMHCC 001280–1284; TMHCC 001285–1288; TMHCC 001289–1292; TMHCC 001363–1368* — These emails between Vogrin Frimet and HCC coordinate a time to discuss communications received from Roc Nation. These emails are protected by the attorney-client privilege.

*TMHCC 001372–1376* — HCC provided a redacted version of this email chain, disclosing emails between Vogrin Frimet and Roc Nation and redacting emails between Vogrin Frimet and HCC. The redacted portions relate to legal advice and are appropriately redacted.

*TMHCC 001445–1448* — Vogrin Frimet sent this draft correspondence to HCC for HCC's approval. HCC properly invokes attorney-client privilege, as the document raises legal issues and is of a legal character.

*TMHCC 001449–1453; TMHCC 001454–1458* —This is an email chain between Vogrin Frimet and HCC, in which Vogrin Frimet addresses legal issues raised by HCC. It is properly withheld.

*TMHCC 001463–1464; TMHCC 001465–1474* — These documents relate to correspondence that Vogrin Frimet drafted and sent to HCC for approval. They are privileged, as the draft correspondence includes Vogrin Frimet's legal analysis and addresses the prospect of settlement.

*TMHCC 001475–1477* — This is an email chain between Vogrin Frimet and HCC that coordinates a time to talk and raises potential legal and settlement-related issues. The emails are protected by the attorney-client privilege.

*TMHCC 001478–1483; TMHCC 001484–1488* — In this email chain, Vogrin Frimet advises HCC as to a variety of legal issues raised by HCC and proposes draft correspondence for HCC's review. These documents are properly withheld.

*TMHCC 001494–1498; TMHCC 001499–1502; TMHCC 001508–1512; TMHCC 001552–1555; TMHCC 001556; TMHCC 001557; TMHCC 001567–1572; TMHCC 001573–1578; TMHCC 001579–1583; TMHCC 001584–1586; TMHCC 001623–1625* — These are internal HCC emails that HCC provided to Roc Nation in redacted form. The redactions are appropriate, as the redacted portions incorporate advice from Vogrin Frimet and address settlement.

*TMHCC 001503; TMHCC 001506; TMHCC 001507; TMHCC 001513; TMHCC 001516; TMHCC 001517; TMHCC 001518; TMHCC 001558; TMHCC 001561; TMHCC 001562; TMHCC 001563; TMHCC 001564; TMHCC 001565; TMHCC 001566* — These emails contain Vogrin Frimet's wire information. HCC appropriately withheld these documents as unrelated to Roc Nation's requests.

*TMHCC 001703–1704; TMHCC 001705–1750; TMHCC 001751–1752; TMHCC 001753–1754; TMHCC 001755–1801; TMHCC 001802; TMHCC 001803–1849* — These documents relate to correspondence drafted by Vogrin Frimet and sent to HCC for review and approval. The documents involve legal strategy and settlement, and are covered by the attorney-client privilege.

        b.   *Documents Requiring Redactions*

*TMHCC 001002; TMHCC 001003–1034* — These documents relate to a Vogrim Frimet memorandum to HCC. HCC invokes the attorney-client privilege, which protects the documents only in part. The Court orders HCC to produce a redacted version of the document beginning at TMHCC 001003, disclosing TMHCC 001003 through the top half of TMHCC 001019 (pp. 1–17), which contains the memorandum's recitation of the facts related to the claim investigation. The remainder of the document is properly withheld, as it contains discussion of case law, legal analysis, and legal strategy.

11

*TMHCC 001420–1421; TMHCC 001422–1444* — These documents relate to a second Vogrin Frimet memorandum to HCC. HCC invokes the attorney-client privilege, which again protects only portions of the memorandum. The Court thus orders HCC to provide Roc Nation with a redacted version of the document beginning at TMHCC 001422, disclosing TMHCC 001422 through the top portion of TMHCC 001435 (pp. 1–14). These sections are not privileged because they contain facts related to Roc Nation's claim and HCC's investigation of that claim. The remainder of the document contains Vogrin Frimet's legal analysis and is privileged.

*TMHCC 001634–1642; TMHCC 001643–1649; TMHCC 001650–1655; TMHCC 001656–1662; TMHCC 001663–1668; TMHCC 001679–1691; TMHCC 001692–1702* — These email chains relate to settlement discussions and strategy. Although attorney-client privilege protects the emails between Vogrin Frimet and HCC, the earlier emails in this chain between Vogrin Frimet and Roc Nation's counsel are not privileged. The Court therefore orders HCC to produce redacted versions of each of these documents, unredacting the portions of the documents containing emails between Vogrin Frimet and Roc Nation's counsel (*e.g.*, in the document beginning at TMHCC 001679, HCC should disclose TMHCC 001683–1691, but may redact TMHCC 001679–1682).

2. **Documents HCC Must Disclose**

*TMHCC 000799–828; TMHCC 001587–1616* — These identical documents are details of the insurance policy provided by Bretton Woods, the insurance broker. The policy documents were attached to emails that HCC claims are privileged, but the underlying account of the policy is not privileged, even if has been provided to an attorney. HCC must therefore disclose these documents.

*TMHC 000829–865* — This document, attached to a privileged email, is the purchase agreement signed by Roc Nation, CAM, and Feldstein. Roc Nation has seen this signed

agreement, and the agreement is not privileged simply by being attached to a privileged email. HCC must disclose the purchase agreement.

*TMHCC 000866–899* — This email attachment is Feldstein's autopsy report, which contains facts that do not become privileged because they are provided to an attorney. HCC must disclose the autopsy report.

*TMHCC 001044–1045; TMHCC 001046–1048; TMHCC 001049–1050; TMHCC 001051–1053; TMHCC 001054* — These documents relate to Vogrin Frimet's request of a doctor to review Feldstein's autopsy report and provide an opinion on Roc Nation's claim. HCC and Vogrin Frimet engaged in these communications with the doctor to gather facts to assess the claim. HCC invokes the attorney-client privilege as to all of the documents and the work product doctrine as to some (TMHCC 001049–1050; TMHCC 001051–1053). The attorney-client privilege, however, does not protect these communications because they relate to claims investigation. *Cf. Congregation BNEI Luzer Inc.*, 2004 WL 2609570, at *2 (communication from attorney to private investigator asking for further investigation not privileged). And the work product doctrine does not apply because HCC did not meet its burden of showing these communications were made in anticipation of litigation. The primary purpose of these communications appears to have been obtaining a doctor's report to help assess the claim. And these communications were sent on May 10 and 11, 2018, just a week after HCC issued its reservation of rights letter and four months before it issued a denial of the claim. *See id.* (documents created before draft denial letter were not created in anticipation of litigation).

*TMHCC 001062–1063; TMHCC 001064; TMHCC 001065–1066; TMHCC 001067–1080; TMHCC 001081–1083; TMHCC 001084–1109; TMHCC 001212–1213* — These email attachments are Roc Nation's responses to requests for information from HCC, sent to

MDD (HCC's forensic accountants) and forwarded to Vogrin Frimet, or sent directly to HCC. These requests for information came from Roc Nation and therefore are not privileged.

*TMHCC 001214–1239; TMHCC 001240–1279* — These documents, attached to a privileged email, are agreements authored by CAM and Feldstein and thus are not privileged.

*TMHCC 001368; TMHCC 001369–1371* — These documents relate to a letter drafted by Vogrin Frimet to send to Roc Nation, requesting that Roc Nation disclose additional information about their insurance claim. Vogrin Frimet drafted the letter in its investigative role, and therefore HCC must disclose the documents.

*TMHCC 001377–1382; TMHCC 001383–1388; TMHCC 001389–1394; TMHCC 001395–1414; TMHCC 001415–1419* — These email attachments are documents sent from Roc Nation to Vogrin Frimet in response to a Vogrin Frimet letter requesting more information about the claim. These documents are not privileged for two reasons. First, they are in Vogrin Frimet's custody on account of its factual investigation, which the Court attributes to the firm's non-privileged role with respect with claims assessment. Second, they were created by Roc Nation, HCC's adversary.

*TMHCC 001489; TMHCC 1490* — These documents, attached to a privileged email, are notes and a spreadsheet from MDD, the forensic accountants, related to Roc Nation's claim. They contain some of the results of the claims investigation and thus cannot be privileged. Further, MDD accountants are not attorneys and therefore their documents, even if provided to Vogrin Frimet, are not covered by the attorney-client privilege. *See Weber*, 2003 WL 161340, at *11 (letter to law firm from investigators hired by insurance company not covered by attorney-client privilege).

*TMHCC 001504–1505; TMHCC 001514–1515; TMHCC 001559–1560* — This letter, attached to various emails, was sent from Roc Nation to Vogrin Frimet, agreeing to accept an interim payment from HCC and to meet to discuss settlement of the claim. Because this letter originates with Roc Nation, it is not privileged.

*TMHCC 001617–1618; TMHCC 001619* — HCC purportedly provided Roc Nation with redacted versions of these documents, related to a large loss report for the claim that was generated by HCC. HCC provided the Court with a "redacted" version of TMHCC 001617–1618 that contained no redactions, and failed to provide any redacted version of TMHCC 001619. HCC claims that the large loss report is protected by attorney-client privilege, not responsive to Roc Nation's demands, and contains confidential business information. The Court disagrees. The large loss report was created by HCC, contains results of its claims investigation, and is not a communication made for the purpose of obtaining legal advice. Further, a loss report related to Roc Nation's claims is responsive to plaintiff's document demands. The Court does not view these documents as containing information that HCC should redact and thus orders HCC to produce the documents in full.

### 3. Documents the Court Declines to Address

*TMHCC 00978–986; TMHCC 001035–1043* — These two documents are part of Appendix B in Roc Nation's discovery letter. *See* RN Letter at 4. Appendix B contains documents in HCC's privilege log that are listed as privileged, but as to which the privilege log errantly lacks an attorney recipient or sender. Because the Court ordered HCC to produce tightly redacted versions of the documents in Appendix B, Dkt. 110 at 3, it declines, at this time, to determine whether HCC should be required to produce these documents in full.

## CONCLUSION

For the foregoing reasons, and in the manner detailed above, the Court has resolved the above disputes regarding HCC's privilege claims. The Court orders HCC to produce, forthwith, full or redacted versions, as indicated, for documents that that the Court has held not protected in full by the attorney-client privilege.

This opinion resolves the parties' most recent discovery dispute. The Court expects that this will be the last time counsel will call upon the Court to resolve discovery or other non-substantive disputes. The Court has been struck and disappointed by the uncommonly high level of discord and distrust among counsel in this case and by counsels' evident inability to work fruitfully together. Retained counsel in the vast majority of other cases before the Court, on its civil and criminal dockets, are capable of resolving matters relating to discovery and scheduling and the like without the need to seek judicial resolution on the scale and with the acrimony reflected here. The Court is constrained again to admonish counsel to strive to achieve the level of professionalism and collegiality which the Court and the bar in this District rightly expect.

SO ORDERED.

  _____
Paul A. Engelmayer
United States District Judge

Dated: April 24, 2020
       New York, New York